458 So.2d 722 (1984)
Helen WILLIS
v.
Mary MARLAR.
No. 54748.
Supreme Court of Mississippi.
October 10, 1984.
Rehearing Denied November 14, 1984.
Charles R. Wilbanks, Corinth, for appellant.
Wendell H. Trapp, Jr., Smith, Ross & Trapp, Corinth, for appellee.
Before PATTERSON, C.J., and BOWLING and DAN M. LEE, JJ.
*723 PATTERSON, Chief Justice, for the Court:
On November 17, 1981, Helen Willis brought suit against Mary Marlar for injuries Mrs. Willis received in an automobile collision. The Circuit Court of Alcorn County sustained defendant's motion for a directed verdict at the conclusion of plaintiff's case in chief, and Mrs. Willis appeals.
On December 29, 1980, the automobile of Helen and Billy Joe Willis was struck in the rear by a car driven by Mary Marlar. At the time both Mr. and Mrs. Willis occupied their vehicle which was damaged beyond repair. Although Mrs. Marlar and Mr. Willis were uninjured in the accident, Mrs. Willis complained of pain in her neck and was driven to the local hospital, where she was X-rayed and released.
During the following week Mrs. Willis twice consulted Dr. Frank Davis, who prescribed medication to relieve the distress in her neck and shoulder. She later returned to her employment at a shirt factory in early January, the first working day of 1981, and with the exception of a few days, worked there steadily until May 15, 1981. However, during this interval she experienced pain and reduced effectiveness at work.
On January 8, 1981, State Farm Insurance Company, the insurer for Mary Marlar, delivered its draft for $6,500 payable to Billy Willis and Ford Motor Credit Company. Mr. Willis endorsed the check, which was used to pay the debt owed to Ford Motor Credit Company for the car that Mrs. Marlar had damaged. While Mrs. Willis did not endorse the draft, she acknowledged it by executing a receipt for $6,500. Having paid the indebtedness on their wrecked car, the Willises purchased a used Mercury Cougar automobile, financed through Ford Motor Credit, for substantially the same sum as their old vehicle had cost.
On January 26, the Willises signed an instrument entitled "Agreement and Release,"[1] which is of primary concern in this suit.
According to the Willises' testimony, State Farm claims adjuster Eddie Whaley telephoned Mr. Willis on January 26, 1981, and expressed a desire to meet with Mr. and Mrs. Willis during their lunch break at the guard shack of the factory where Mrs. Willis worked. Mrs. Willis stated she had a thirty-minute lunch break and spent at least ten minutes walking to the guard shack. When she arrived, Mr. Whaley asked her to sign a document expressing her satisfaction with the used Cougar she and Mr. Willis had bought to replace the wrecked car. When she inquired about blank spaces in the agreement, Whaley replied that he had not filled it out but would do so later. He also promised her a copy of the agreement which she never received. Nevertheless, she signed the instrument without reading it.
Mr. Willis arrived at the Guard Shack immediately thereafter, and Mrs. Willis returned to work. Believing the release form to be a statement that State Farm would pay "up to date" all medical bills, Mr. Willis signed it. When asked why he did not read the document, he testified, "Well, it was one of those hurry deals." He also testified that the handwriting and the print entitled "Schedule of Benefits" was not on the document when he signed it and that the words "Agreement and Release" at the top of the paper were concealed under the clip of a clipboard at the time.
Mrs. Willis continued to experience pain in her neck, shoulder and arm, and in May 1981, consulted Dr. William Brown, a neurosurgeon. It was his opinion that Mrs. Willis had a slipped disc and required surgery, which Mrs. Willis feared. She consulted another neurosurgeon, a Dr. Boyd of Memphis, who at one point admitted her into the hospital for a week. Mrs. Willis testified her injury prevented her working from May 15 to October 26, 1981. She then worked a little over a week, after which she did not return to her employment until January 2, 1982.
*724 According to her testimony, Mrs. Willis was unable to return State Farm's money when she discovered she had signed the release, stating she "didn't have any of their money... ." State Farm paid the Willises a total of $6,924.00. The first $6,500 went to Ford Motor Credit in payment of the demolished vehicle without reaching Mrs. Willis. It appears from the record that by the time the Willises realized the significance of the document signed on January 26, 1981, they were in extreme financial distress and were unable to repay the consideration for the release.
In her answer to the suit Mrs. Marlar gave notice to Mrs. Willis, that she intended to assert the release as an affirmative defense. In her response to the affirmative defense, Mrs. Willis alleged the release was void because (1) there was an absence of good faith and full understanding of legal rights; (2) the nature and effect of the instrument were misrepresented to Mrs. Willis; (3) there was a failure of consideration, or in the alternative, a grossly inadequate consideration for the execution of the instrument; and (4) Mrs. Willis was induced not to read the instrument.
The trial court sustained Mrs. Marlar's motion for a separate hearing on the affirmative defense that Mrs. Willis' cause of action was barred by the release from all claims arising out of the automobile collision. After a jury was impaneled to try the factual issues in the hearing, Mrs. Willis put on her case in chief. The court then granted defendant's motion for directed verdict.
Mrs. Willis now argues this was error in view of Mississippi Code Annotated, § 11-7-59 (1972), which provides in part:
... And if the defendant fail to sustain the matter of the plea so heard, upon which matter, after motion made, he shall have the burden both as to the law and the facts, he shall nevertheless then have the right to go on to trial upon his answer as a whole. (Emphasis added.)
We held in Ricks Lumber Company, Inc. v. Natchez Steel & Pipe, Inc., 318 So.2d 883, 886 (Miss. 1975), "When defendant requested a separate hearing on the pleas set up in its answer, it had the burden both as to law and the facts. See Section 11-7-59, Mississippi Code 1972 Annotated."
It should be noted that although Mrs. Marlar, the defendant, had the burden of proof to establish the issue raised by her affirmative plea, she offered no testimony in support of it. It appears that the plaintiff assumed such burden and offered the testimony above related concerning the execution of the "release" and the receipt. Indeed the plaintiff introduced the deposition of Mr. Eddie Whaley, the insurance adjuster, who procured the "release." From it and the testimony of the plaintiff, there came into being an issue of fact for the jury's determination, in our opinion.
In accord with the rule stated in Gates v. Murphree, 286 So.2d 291, 292 (Miss. 1973), that on appeal from directed verdict we will accept as true the evidence of appellant together with all reasonable inferences, we reverse and remand so that the trial might proceed according to Mississippi Code Annotated, § 11-7-59 (1972).[*]
REVERSED AND REMANDED FOR A NEW TRIAL.
WALKER and ROY NOBLE LEE, P.JJ., and BOWLING, HAWKINS, DAN M. LEE, PRATHER, ROBERTSON and SULLIVAN, JJ., concur.
*725 
NOTES
[1] Appendix "A".
[*] This suit was filed in November of 1981. The procedures herein discussed have since been supplanted by Rule 81(h), Miss.R.Civ.P., Appendix B (Practice and Procedure in Circuit Courts), effective January 1, 1982.