HACKLER *v.* NATCHEZ & 'S. RY. CO. *et al.*

(Division Λ.   May 12, 1930.)

[128  So. 325.  No. 28692.]

**Kennedy & Geisenberger,** of Natchez, for appellant.

E. H. Ratcliff, of Natchez, for appellees.

Argued orally by **L. T. Kennedy**, for appellant.

**Cook, J.**, delivered the opinion of the court.

The appellant, B. L. Hackler, instituted this suit in the circuit court of Adams county against the Natchez & Southern Railway Company and the Natchez & Louisiana Transportation Company, seeking to recover damages alleged to have been sustained by reason of negligence of the defendant in failing to furnish him a safe place to work while he was employed by them in switching and removing cars from a transfer boat operated by the said Natchez & Louisiana Transportation Company, in interstate commerce, and by reason of the failure of the Natchez & Southern Railway Company to comply with the Federal Safety Appliance Act (Act Cong. March 2, 1893, sec. 4 [45 U. S. C. A., sec. 4]), by providing necessary grabirons or handholds on the sides of the car from which the appellee fell and was injured. The declaration also alleged that some months after he was injured the defendants offered to settle his claim for the damages sustained by him by paying his hospital and medical expenses, and his full salary for the six months' time that he had lost as a result of his injury; and that he was fraudulently induced to accept this offer of settlement, and to sign a release of all liability for the injury so sustained by him, and that consequently the release executed by him was fraudulent and void. The appellees filed a plea

of general issue, and gave notice thereunder that they would offer evidence to prove that at the time of his injury he was engaged in interstate commerce, and had, assumed the ordinary risks of his employment; that the defendants were guilty of no negligence which caused his injury; that the settlement with the appellant was fairly and openly made; and that the release signed by him was executed with full knowledge of all the facts, and of the contents thereof.

The essential facts, as shown by the testimony offered by the appellant, are as follows: At the time of his injury, and for many years prior thereto, the appellant was. employed by the Natchez & Southern Railway Company as engine foreman, in charge of a crew engaged in switching in the railroad yards, and in moving railroad cars to and from a transportation boat operated by the Natchez & Louisiana Transportation Company for the purpose of transporting such cars across the Mississippi river. This boat was equipped with two lines of railroad tracks, which were raised about two feet above the level of deck of the boat, these tracks being about seven or eight feet apart. Between these lines of tracks there was erected a plank walk way, which was level with the rails of the tracks. Between the outer edges of this walk way and the adjacent rails to of the tracks there was an uncovered space about twenty inches wide, thus leaving an opening, the bottom of which was the deck of the boat. In moving cars to and from the boat, the switch engine was not run onto the boat, but connections were made with the cars by using a trailer or freight car attached to the engine. This trailer passed onto the boat over a movable platform or track, called a cradle, which could be connected with the tracks on the mainland and with either of the tracks on the boat. There was no walk way over this cradle from the land onto the boat, and in going on the boat to make connections with cars thereon it was necessary for the employees to ride on the trailer, or the cars then moving to and from the boat.

The appellant testified that, on the occasion when he was injured, he was engaged in the duties incident to removing certain oil cars from the boat; that he had made the proper coupling between these cars and the trailer attached to the switch engine; that as the oil cars were moved off the boat he attempted to board one of them; that there was a grabiron or handhold on the running board of this car, and a stirrup or footrest, about two feet under this running board and the handhold, there being oil and grease on this footrest; that he caught this handhold and placed his foot in the footrest, and then reached above to catch a higher handhold or grabiron on the side of the car, and then, for the first time, discovered that there was no grabiron on the side of this car; that he then attempted to reach a grabiron which was on the end of the car, and, in doing so, because of his strained position, and the oil and grease on the footrest, his foot slipped from the footrest, and he was thrown into the opening between the plank walk way and the rails, and, before he could extricate himself, he was caught by an oncoming car, resulting in the mangling of his foot, to the extent that it was necessary to amputate a part thereof. The appellant also testified that, when this transfer boat was first put into operation at that point, the platform or walk way extended from rail to rail the entire length of the boat, and level with the tracks thereon, and that he had not noticed the change in the condition of this walk way until he fell into this opening between it and the rails.

As to the execution of the release of the appellees from all liability for damages resulting from the injury to the appellant, he testified that, something more than five months after he was injured, a representative of the appellees approached him with an offer of settlement; that he was informed that the company desired that he return to his work, and that it would pay his hospital and medical bills, and also pay his wages for six months' lost time; and that, on account of his anxiety to retain

his former position, he agreed to accept this offer. He further testified that this representative of appellees prepared the written release, and read the same over to him; that he did not read the release, but relied upon this representative, in whom he reposed confidence, to read it correctly, and thereupon signed it. Upon the face of the release it is recited that "employment or re-employment is no part of the consideration of this release;" while the appellant testified that, as read to him, this clause recited: "Employment or re-employment is a part of the consideration of this release." He further testified that he requested that a provision be placed in the contract of settlement to the effect that he would be given other employment if it developed that he was unable to perform the duties of his old job, and that he was informed that this was unnecessary, as the railroad company wanted him to take back his former job. He further testified that at the end of the six-month period he applied to his former superiors for re-employment, but was informed that they had no authority to re-employ him; that thereafter he was put off from time to time with various excuses, until finally, through his counsel, he requested a copy of the release, and upon receipt of this copy he learned for the first time that the release did not contain a provision for re-employment. The original release, which appeared to be signed by two witnesses, contained the following indorsement: "I have read and understand this release. B. L. Hackler," while the copy which was furnished to appellant had on it the name of only one witness, and did not have on it the indorsement above quoted.

At the conclusion of the testimony the court below peremptorily instructed the jury to return a verdict for the defendant, and, from the verdict and judgment entered in pursuance of this instruction, this appeal was prosecuted, the only assignment of error being that the court erred in granting this peremptory instruction.

While denying any liability under the proof offered by the appellant, counsel for the appellees devotes his argument in support of the action of the court below almost entirely to the question of whether or not, under the evidence, the validity of the release executed by the appellant should have been submitted to the jury. Upon the evidence as to the facts and circumstances surrounding the injury, and the conditions causing them, we think the question of whether or not the injury was the result of negligence on the part of the appellees was one for the consideration of the jury, and that it was error to direct a verdict for the appellees, unless it can be held that the evidence is insufficient to create an issue of fact as to whether or not the execution of the release was obtained by fraud.

Upon the issue as to whether or not the appellant read and understood the release before he signed it, the evidence is sharply conflicting. The appellant testified positively that he did not read the release, but relied upon the representative of the appellees, who wrote it, to read it to him; and that in reading the release to him, by the omission of the word "no" from the clause providing that "employment or re-employment is no part of the consideration of this release," he was induced to sign it, believing that the railroad company was thereby obligated to re-employ him in his former position.

There were other circumstances in evidence which tended to support the view that the officers and agent of the appellee railroad company, as well as the appellant, understood that re-employment by the company entered into the consideration of the execution of this release. The appellant had the right to rely on the agent of the appellee, who was authorized to make the settlement, and to prepare and secure the execution of the release, to read the same to him; and if, in reading it to him, he fraudulently omitted therefrom a material part, which entirely changed the meaning and effect thereof, and thereby induced the appellant to sign it, the release was

void, and constitutes no defense to the cause of action. The testimony being in sharp conflict on this point, we are of the opinion that under all the evidence the question of whether or not the release was obtained by fraud, and was therefore void, should have been submitted to the jury. The judgment of the court below will therefore be reversed, and the cause remanded.

Reversed and remanded.