## Tate *v.* Robinson, et al.

No. 39507 March 16, 1955 78 So. 2d 461

*C. F. Engle, R. L. Netterville,* Natchez, for appellant.

*Brandon, Brandon, Hornsby & Handy,* Natchez, for appellees.

ROBERDS, P. J.

Mrs. Tate, the appellant, claims that on May 2, 1953, she received personal injuries in an automobile accident, which injuries were the result of negligence of Mrs. Janice Tate Robinson and Lee Rush, and two other parties. She brought this suit to recover of defendants a personal judgment for the damage so suffered.

All defendants, by appropriate pleas, denied they were guilty of any negligence causing said injuries.

Mr. Rush and Mrs. Robinson, as a further defense, alleged that Mrs. Tate, by written agreement, agreed to, and did, settle and adjust all claims she had against these two appellants.

Mrs. Tate filed a replication to this alleged settlement. Mr. Rush and Mrs. Robinson demurred to the replication on the ground it did not set up sufficient facts, in such manner, as to avoid said adjustment and settlement. The trial court sustained the demurrer and Mrs. Tate appeals to this Court. The only question before us is whether the trial court was justified in holding, as a matter of law, that the facts set out in the replication with the reasonable inferences to be drawn therefrom, constituted no defense to the release and settlement, or whether that is a question to be submitted to a jury, provided the evidence, when introduced, sustains the allegations of the replication.

This calls for a summary of the substantial facts and reasonable conclusions therefrom contained in the release and the replication.

The release is dated June 19, 1953. It recites the payment to Mrs. Tate of $25 in settlement of all claims for personal injuries she received, or claims to have received, in the automobile accident, and her release of Mrs. Robinson, Mr. Rush and Mrs. Rush of all claims and demands on her part for personal damage, loss of services, expenses incurred, property damage, all 'known and unknown personal injuries and property damage,'' resulting from, or growing out of, ''an accident'' that occurred May 2, 1953. She bound herself not to sue releasees for such injuries or damages. She further promised and bound herself to indemnify and hold harmless the three releasees, their heirs, administrators and executors, any sum of money or expenses they, or either of them, might be compelled to pay thereafter ''because

of the said known and unknown personal injuries and property damage.''

The instrument then stipulates, declares and represents ''that the injuries sustained are permanent and progressive and that recovery therefrom is uncertain and indefinite,'' and that in making this settlement she, Mrs. Tate, is relying upon her own judgment as to the nature, extent and duration of said injuries, and that she has not been influenced by any other person in making this settlement. She reserved the right to sue any other person who might be liable for her injuries. She also stipulated that her demand constituted a doubtful claim.

In her replication Mrs. Tate, in substance, said: That one W. W. Martin, Jr. came to see her on several occasions, and suggested that she did not desire to bring suit against Rush, her son-in-law, and asked her to sign a release of Rush of all claims against him, but that, to the best of her memory, he did not ask her to agree not to sue Mrs. Rush or Mrs. Robinson, who were her daughters. She is ''quite sure'' the matter of releasing and not suing her two daughters was not mentioned; that when Martin came to see her she was taking drugs precribed by a doctor for relief of pain and nervousness; that as a result of the accident and her injuries she was very nervous and in continuous pain; that because of her pain and nervousness and the representations and persuasions of Martin ''she did not fairly comprehend just what he was driving at in getting her to sign a paper,'' but that all that she was conscious of doing was that he contended she would not sue her son-in-law; that Martin did not explain to her his purpose in endeavoring to get her to execute a paper, ''but he represented himself to be an adjuster and said he was out there for the purpose of helping her * * * ''; that she was ignorant as to her rights and whether she could bring a suit against her son-in-law and her daughters, ''but placed her confidence in the said Mr. Martin, who said he would pay her doctor bill''; that the instrument was a printed document

and her signature was obtained thereto "without any explanation to her of any rights that she had to bring a suit against anyone," and that Martin preyed upon her feelings and sympathies and argued to her that the party liable to her was a Mr. Hall. She alleged that Martin represented that "he was acting in her interest and for her benefit and that he was on her side." She averred that her injuries are permanent in nature and will cause her pain and suffering the remainder of her natural life; that the $25 paid her was a nominal sum, and was entirely inadequate to compensate her for her injuries; that Martin told her she could not sue the company he was representing. She then averred that the names of Mrs. Rush and Mrs. Robinson are typed into the release and she did not know their names were in the instrument. She averred she did not read the document; that she could not see to read with the glasses she was then using and did not go to fetch those with which she could read "but placed her confidence in the representations and statements of the said Mr. Martin"; that no copy of this instrument was left with her, and that at the time she signed the paper "she was not in mental condition of understanding, comprehending and appreciating the meaning, nature and purpose * * * " of the terms and provisions of the instrument; that at that time she did not know the nature or extent of her injuries; that had she known that and her rights she would never have signed the document, and especially so for the nominal sum of $25; that she has since learned of the serious and permanent nature of her injuries, which will continue to cause her extreme pain and suffering, and which necessitate a serious and expensive operation, which she is not financially able to bear, and that recently she has been forced to stop her medical treatment and the services of a doctor because of inability to pay therefor. She then averred that since the execution of the release she has undergone medical examination, which has disclosed "* * * she has suffered

contusions of the back, hip and scalp, and has pain in the lower abdomen, and has developed a marked rectocele (which means hernia of the rectum) and cystocele (which means hernia of the bladder) with complete prodientia (which means prolapse of falling down of her bladder)''; that she did not know of these injuries at the time she executed the release, nor that medical examination would disclose them. She then tendered the $25 into court to be paid to such an one as might be entitled thereto. The replication had attached to it an affidavit of Mrs. Tate that the matters and things therein stated as being within her personal knowledge were true as stated, and those alleged on information and belief were true to the best of her information, knowledge and belief.

The question now recurs whether or not the demurrer to the replication should have been sustained.

The rules of law applicable to this situation are well-settled. They reduce themselves to the requirement that to avoid this release the proof must be clear and convincing. Pearce v. Pierce, 214 Miss. 344, 58 So. 2d 824. We have concluded, after thorough consideration of all the allegations of the replication, with the reasonable and logical inferences to be drawn therefrom, that it is sufficient to withstand a demurrer. All the facts set out in the replication, with the reasonable conclusions to be drawn therefrom, are admitted by the demurrer. It would be repetitious for us to again set out the averments of the replication. However, we might call attention to the very important facts, admitted by the demurrer, that Mrs. Tate is permanently and very seriously injured and crippled for life, and that for such injuries, as against the releasees herein, she has been paid the nominal sum of $25, and that she says that in negotiating and making the settlement she did not know her rights and that she relied entirely upon the statements and representations of Martin, who induced her to execute the instrument, and whose principal is not dis-

closed. ██ These important facts, coupled with the other allegations of the replication, bring us to the conclusion that the demurrer should not have been sustained, and that a full hearing, under proof and proper instructions, should be had before a jury on the issue whether or not the release should be avoided.

Reversed and remanded.

*Lee, Arrington, Ethridge* and *Gillespie, JJ.,* concur.