# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2001-CA-01574-SCT

*ROYER HOMES OF MISSISSIPPI, INC.*

*v.*

*CHANDELEUR HOMES, INC.*

| | |
|---|---|
| DATE OF TRIAL COURT JUDGMENT: | 9/24/2001 |
| TRIAL JUDGE: | HON. MIKE SMITH |
| COURT FROM WHICH APPEALED: | PIKE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JACK G. PRICE |
| ATTORNEY FOR APPELLEE: | RONALD L. WHITTINGTON |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED -10/23/2003 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**SMITH, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     Royer Homes of Mississippi, Inc., appeals to this Court from the final judgment of the Circuit Court of Pike County dismissing Royer's 1992 lawsuit against Chandeleur Homes, Inc., for unpaid warranty work and receivable accounts.  The court below ruled that a 1998 Release Agreement between the Royer and Champion Enterprises, Inc., which acquired Chandeleur, was unambiguous and released Royer's present claim.  We hold that the trial court properly dismissed all claims against Chandeleur including the 1992 Pike County lawsuit.  Accord and satisfaction of all of Royer's claims was properly found  based on the December 1998 Confidential Settlement, Release and Indemnity Agreement  which released Royer's present claim.  We find no merit to Royer's appeal and affirm the trial court.

**FACTS**

¶2.     In 1986, Royer Homes of Mississippi, Inc. (Royer), a manufactured home dealer, entered into sales and distribution contracts with Chandeleur Homes, Inc. (Chandeleur), a manufactured home manufacturer. Under Mississippi law, Royer was required to perform any warranty work on the Chandeleur homes it sold. In 1992, Royer filed suit against Chandeleur in the Pike County Circuit Court for unpaid warranty service and unpaid accounts receivable. The suit remained dormant for several years. In 1995 Chandeleur was acquired by Champion Enterprises, Inc. (Champion). And in 1997, Royer sued Champion in Hinds County Circuit Court alleging, inter alia, that Champion had engaged in a scheme devised to put Royer out of business. Specifically, the Hinds County complaint alleged breach of contract, tortious interference, common law fraud, and violations of anti-monopoly and unfair trade law.

¶3.     The parties never went to trial on the Hinds County lawsuit. Instead, they entered into a "Confidential Settlement, Release, and Indemnity Agreement" (Release). But after the parties entered this Release in 1998, Royer resurrected the 1992 Pike County claim. Champion argued that the Pike County claim was released by the 1998 Release. The Pike County Circuit Court agreed. It found the Release unambiguous and inclusive of the Pike County claim and dismissed the case.

**STANDARD OF REVIEW**

¶4.     This Court has stated that questions concerning the construction and interpretation of contracts are questions of law. *Warwick v. Gautier Utility Dist.*, 738 So.2d 212, 214 (Miss. 1999); *Miss. State Highway Comm'n v. Patterson Enters., Ltd.*, 627 So.2d 261, 263 (Miss. 1993). We review questions of law de novo. *Id.*

## DISCUSSION

**I.     DID THE TRIAL COURT ERR IN RULING THAT THE RELEASE AGREEMENT WAS UNAMBIGUOUS, AND THEREFORE RELEASED THE PIKE COUNTY CLAIM?**

¶5.     At issue here is whether the trial court erred in dismissing this litigation as a matter of law holding that the Release Agreement was not ambiguous, therefore Accord and Satisfaction of Royer's Pike County claim was applicable.

¶6.     As a preliminary issue, Royer filed suit in Pike County Circuit Court against Chandeleur Homes in September 1992. Chandeleur was acquired by Champion Enterprises in 1995. This fact was acknowledged by Royer in its brief. Royer alleges that Chandeleur owes bonus incentives for past sales and debt for past warranty work.

¶7.     The question of law/question of fact dichotomy requires a two-step inquiry in contract law. *Neider v. Franklin*, 844 So.2d 433, 436 (Miss. 2003) First of all, it is a question of law for the court to determine whether a contract is ambiguous and, if not, enforce the contract as written. *Miss. Transp. Comm'n v. Ronald Adams Contractor, Inc.*, 753 So.2d 1077, 1087 (Miss. 2000); *Universal Underwriters Ins. Co. v. Ford*, 734 So.2d 173, 176 (Miss. 1999);*IP Timberlands Operating Co. v. Denmiss Corp.*, 726 So.2d 96, 106 (Miss. 1998). Questions concerning the construction of contracts are questions of law that are committed to the court rather than questions of fact committed to the fact finder. *Parkerson v. Smith*, 817 So.2d 529, 532 (Miss. 2002); *Miss. State Highway Comm'n v. Patterson Enters., Ltd.*, 627 So.2d 261, 263 (Miss. 1993). Appellate courts review questions of law de novo. *Parkerson*, 817 So.2d at 532; *Starcher v. Byrne,* 687 So.2d 737, 739 (Miss. 1997).

3

¶8. In the event of an ambiguity, the subsequent interpretation presents a question of fact for the jury which we review under a substantial evidence/manifest error standard. *Clark v. State Farm Mut. Auto. Ins. Co.*, 725 So.2d 779, 781 (Miss. 1998); *Lamb Constr. Co. v. Town of Renova*, 573 So.2d 1378, 1383 (Miss. 1990) (citing *Bryant v. Cameron*, 473 So.2d 174, 179 (Miss. 1985)). If the terms of a contract are subject to more than one reasonable interpretation, it is a question properly submitted to the jury. *Mississippi Transp. Comm'n v. Ronald Adams Contractor, Inc*., 753 So.2d at 1087; *Garner v. Hickman*, 733 So.2d 191, 195 (Miss. 1999).

¶9. The primary purpose of all contract construction principles and methods is to determine and record the intent of the contracting parties. *Kight v. Sheppard Bldg. Supply, Inc*., 537 So.2d 1355, 1358 (Miss. 1989). "In contract construction cases a court's focus is upon the objective fact--the language of the contract. [A reviewing court] is concerned with what the contracting parties have said to each other, not some secret thought of one not communicated to the other." *Turner v. Terry*, 799 So.2d 25, 32 (Miss. 2001); *Osborne v. Bullins*, 549 So.2d 1337, 1339 (Miss. 1989). A reviewing court should seek the legal purpose and intent of the parties from an objective reading of the words employed in the contract to the exclusion of parol or extrinsic evidence. The reviewing court is not at liberty to infer intent contrary to that emanating from the text at issue. *Cooper v. Crabb*, 587 So.2d 236, 239 & 241 (Miss. 1991).

¶10. This Court has set out a three-tiered approach to contract interpretation. *Pursue Energy Corp. v. Perkins*, 558 So.2d 349, 351-53 (Miss. 1990). Legal purpose or intent should first be sought in an objective reading of the words employed in the contract to the exclusion of parol or extrinsic evidence. *Cooper v. Crabb*, 587 So.2d at 241; *City of Grenada v. Whitten Aviation, Inc*., 755 So.2d 1208,

4

1214 (Miss. Ct. App. 1999)). First, the "four corners" test is applied, wherein the reviewing court looks to the language that the parties used in expressing their agreement. ***Pursue Energy Corp.***, 558 So. 2d at 352 (citing ***Pfisterer v. Noble,*** 320 So.2d 383, 384 (Miss. 1975)). We must look to the "four corners" of the contract whenever possible to determine how to interpret it. ***McKee v. McKee***, 568 So.2d 262, 266 (Miss. 1990). When construing a contract, we will read the contract as a whole, so as to give effect to all of its clauses. ***Brown v. Hartford Ins. Co***., 606 So.2d 122, 126 (Miss. 1992). Our concern is not nearly so much with what the parties may have intended, but with what they said, since the words employed are by far the best resource for ascertaining the intent and assigning meaning with fairness and accuracy. ***Simmons v. Bank of Miss***., 593 So.2d 40, 42-43 (Miss. 1992). Thus, the courts are not at liberty to infer intent contrary to that emanating from the text at issue. ***Id.*** (citing ***Cooper***, 587 So.2d at 241). On the other hand, if the contract is unclear or ambiguous, the court should attempt to "harmonize the provisions in accord with the parties' apparent intent." ***Pursue Energy Corp***., 558 So.2d at 352. Only if the contract is unclear or ambiguous can a court go beyond the text to determine the parties' true intent. ***Id.*** "[T]he mere fact that the parties disagree about the meaning of a contract does not make the contract ambiguous as a matter of law." ***Turner***, 799 So.2d at 32; ***Cherry v. Anthony***, 501 So.2d 416, 419 (Miss. 1987).

¶11. Secondly, if the court is unable to translate a clear understanding of the parties' intent, the court should apply the discretionary "canons" of contract construction. ***Pursue Energy Corp.,*** 558 So. 2d at 352. Where the language of an otherwise enforceable contract is subject to more than one fair reading, the reading applied will be the one most favorable to the non-drafting party. ***Leach v. Tingle***, 586 So.2d

799, 801-02 (Miss. 1991) (citing *Stampley v. Gilbert*, 332 So.2d 61, 63 (Miss. 1976)). Finally, if the contract continues to evade clarity as to the parties' intent, the court should consider extrinsic or parol evidence. *Id.* It is only when the review of a contract reaches this point that prior negotiation, agreements and conversations might be considered in determining the parties' intentions in the construction of the contract. "Of course, the so-called three-tiered process is not recognized as a rigid 'step-by-step' process. Indeed, overlapping of steps is not inconceivable." *Id.* at 351 n.6.

¶12.    Here, the language of the Release specifically states that it is "in settlement of any and all claims, demands, losses, costs, damages and expenses" including **"but not limited to"** those specified in the agreement. The Release Introduction includes the relevant language **"including but not limited to."** The Release Clause releases **"any claim of any type in any way related to the business dealings on or before the date of [the] agreement between Royer, the Whites and Releasees."** Champion argues that the release settles "any and all claims that exist(ed) as of the date of the agreement, December 22, 1998." The scope of the Release is unlimited to the release of claims arising before the execution.

¶13.    There is no ambiguity in the relief created by the references to the "Hinds County Lawsuit" or the "lawsuit." Royer offers no explanation of the provisions of the contract which affirm without restriction the agreement constituted the settlement of all matters and "any claim of any time in any way related to business dealings on or before the date of the agreement between Royer, the Whites and the Releasees."

¶14.    As to the assertion that paragraph 12 of the Release reserves the present cause of action, Royer ignores the language in that paragraph that specifically addresses warranty claims "hereinafter asserted."

6

The Reservation of Claims does not identify the pending litigation in the Pike County Circuit Court as a claim not released under paragraph 5 of the Settlement Agreement.

¶15.    Thus, the circuit court did not err in finding that the Release was unambiguous and released the Pike County claim.

## II.    DID THE TRIAL COURT PROPERLY FIND AN ACCORD AND SATISFACTION OF ROYER'S PIKE COUNTY CLAIM BASED ON THE RELEASE AGREEMENT?

¶16.    The Confidential Settlement, Release, and Indemnity Agreement clearly incorporates the elements of accord and satisfaction. This Court has consistently held that accord and satisfaction consists of four basic requirements. *Wallace v. United Mississippi Bank*, 726 So.2d 578, 589 (Miss. 1998); *Alexander v. Tri-County Coop. (AAL)*, 609 So.2d 401, 404-05 (Miss. 1992); *Lovorn v. Iron Woods Prods. Corp.*, 362 So.2d 196, 197 (Miss. 1978). In *Cook v. Bowie*, 448 So.2d 286 (Miss. 1984), this Court further noted that an accord and satisfaction "must have all the essentials of a contract and may be express, or implied from the circumstances." *Id.* at 287 (quoting *Roberts v. Finger*, 227 Miss. 671, 677-78, 86 So.2d 463, 465 (1956)). First, something of value must be offered in full satisfaction of demand. *Wallace*, 726 So.2d at 589. Second, the offer must be accompanied by acts and a declaration which amount to a condition that if the thing offered is accepted, it is accepted in satisfaction. *Id.* Third, the party offered the thing of value is bound to understand that if he takes it, he takes it subject to the conditions. *Id.* Last and fourth, the party must actually accept the item offered. *Id.*

¶17.    As clearly required by the first three elements of a valid accord and satisfaction, there must be a "meeting of the minds of the parties." *Id.* (citing *Cook*, 448 So.2d at 287; (quoting *Roberts*, 227 Miss. at 677-78, 86 So.2d at 465)). This Court has held that an obligee may execute a valid accord and

7

satisfaction by cashing checks which were offered as full satisfaction of a demand. *See, e.g.*, *Lovorn*, 362 So.2d at 197-98.

¶18.    This Court has held that a jury should be allowed to decide the issue of whether a release was obtained in good faith and with the full understanding on the plaintiff's part of his legal rights. *Quinn v. Miss. State Univ.*, 720 So.2d 843, 850 (Miss. 1998) (citing *Smith v. Sneed*, 638 So.2d 1252, 1261 (Miss. 1994); (citing *Service Fire Ins. Co. of N.Y. v. Reed*, 220 Miss. 794, 72 So.2d 197 (1954); *see also Willis v. Marlar*, 458 So.2d 722 (Miss. 1984)). In construing the release against the university, the party who drafted it, we held that reasonable minds could differ as to what types of risks the Quinns were assuming by signing the release. *Quinn,* 720 So.2d at 851 (citing *Farragut v. Massey*, 612 So.2d 325, 330 (Miss. 1992)). *See Leach v. Tingle*, 586 So.2d at 801 (ambiguities in contract should be construed against party who drafted the instrument). Even if the release was not ambiguous, the university would not be relieved of liability. 720 So. 2d at 851. Clauses that limit liability are given strict scrutiny by this Court and are not to be enforced unless the limitation is fairly and honestly negotiated and understood by both parties. *Id.* (citing *Farragut,* 612 So.2d at 330).

¶19.    In *Farragut v. Massey*, we thoroughly discussed releases, their interpretation, and their validity. "[E]very person must be presumed to know the law, and in absence of some misrepresentation, or illegal concealment of facts, the person must abide the consequences of his contracts and actions." 612 So. 2d at 329 (quoting *McCorkle v. Hughes*, 244 So.2d 386, 388 (Miss. 1971)). *See also Quinn*, 720 So.2d at 850. The Court in *Farragut* quoted from *Sumter Lumber Co. v. Skipper*, 183 Miss. 595, 608-09, 184 So. 296, 298-99 (1938), the following language:

The rules for the construction of deeds or contracts are designed to ascertain and to follow the actual or probable intention of the parties and are: When the language of the deed or contract is clear, definite, explicit, harmonious in all its provisions, and free from ambiguity throughout, the court looks solely to the language used in the instrument itself, and will give effect to each and all its parts as written. When, however, the language falls short of the qualities above mentioned and resort must be had to extrinsic aid, the court will look to the subject matter embraced therein, to the particular situation of the parties who made the instrument, and to the general situation touching the subject matter, that is to say, to all the conditions surrounding the parties at the time of the execution of the instrument, and to, what as may be fairly assumed, they had in contemplation in respect to all such said surrounding conditions, giving weight also to the future developments therein about which were reasonably to be anticipated or expected by them; and when the parties have for some time proceeded with or under the deed or contract, a large measure, and sometimes a controlling measure, of regard will be given to the practical construction which the parties themselves have given it, this is on the common sense proposition that actions generally speak even louder than words.

*Farragut*, 612 So.2d at 329.

¶20.    In *Smith v. First Federal Sav. & Loan Ass'n of Grenada*, 460 So.2d 786 (Miss. 1984), by its clear and unambiguous terms, the release discharged and acquitted Smith of all liabilities to First Federal arising out of three enumerated corporate business loans. *Id.* at 790. Smith's three personal secured loans had no connection with the matters referred to in the release except, of course, for the fact that the secured lender in each instance was First Federal and the debtor in each instance was John Doyle Smith. *Id.* Although Smith argued that the release was labeled "General Release," there was no substantive term or provision in the release which fairly provided, expressly or impliedly, release from anything other than claims related to the shopping center. *Id.* This Court found the limited release was mislabeled "General Release." *Id.* The Court presumed that Smith and First Federal were fully aware of these three outstanding loans at the time the release was executed on June 2, 1982. *Id.* Had they wished to make any provision with reference to those loans, they could easily have done so. *Id.* Their failure to do so and

9

the absence of language in the release which is broad enough to acquit Smith of any obligations except those arising from or connected with the Times Square shopping center operation resulted in our conclusion that the circuit court correctly held that the release did not affect the three personal secured loans. *Id*.

¶21.   In *Willis v. Marlar*, 458 So.2d 722, 724 (Miss. 1984), this Court held that the issue of whether a release was void because of "an absence of good faith and full understanding of legal rights [and the] nature and effect of instrument was misrepresented" was a question of fact for a jury. *Accord*, *Whitehead v. Johnson*, 797 So.2d 317 (Miss. Ct. App. 2001). *See also Samples v. Hall of Miss., Inc*., 673 F. Supp. 1413, 1417 (N.D. Miss. 1987) (summary judgment denied where plaintiffs alleged that release agreements were not explained to them before signing and that they were told they would not receive severance pay unless they signed the agreements); *Garner v. Hickman*, 733 So.2d at 196 ("The circumstances are such that a jury should have been allowed to consider whether the so-called release was void because of an absence of good faith and a full understanding of legal rights, misrepresentation of the nature and effect of the document or lack of adequate consideration."); *Smith v. Sneed*, 638 So.2d 1252, 1253 (Miss. 1994) (summary judgment improperly entered on the issue of the voluntariness of the plaintiff's release); *Alexander v. Myers*, 219 So.2d 160 (Miss. 1969); *City of Meridian v. Godwin*, 185 So.2d 433, 439  (Miss. 1966) (a jury question presented when employee with fourth grade education signed release that was not explained to him); *Tate v. Robinson*, 223 Miss. 461, 78 So.2d 461 (1955); *Hackler v. Natchez & S. Ry.*, 157 Miss. 432, 128 So. 325 (1930); *Davis v. Elzey*, 126 Miss. 789, 88 So. 630, *affirmed on suggestion of error* 126 Miss. 789, 89 So. 666 (1921) (where a release

and settlement is pleaded in bar of action for personal injury, and the evidence conflicts as to plaintiff's capacity to make an agreement, the question is for the jury, and its decision is binding).

¶22.    In *Willis*, this Court reversed the grant of a directed verdict by the trial court and held that a jury question was presented as to the validity of a release and whether the release was void because of an absence of good faith and full understanding of legal rights, whether the nature and effect of the instrument was misrepresented or whether there was a failure of consideration or at least grossly inadequate consideration for execution of the instrument. *Willis*, 458 So.2d at 724. In that case, the parties were involved in a motor vehicle accident. The Willis vehicle was damaged beyond repair, and Mrs. Willis complained of neck pain and was treated at a local hospital and released. *Id*. at 723.  Mrs. Marlar's insurance company delivered a check for $6500 representing the property damage payable to Mrs. Willis and Ford Motor Credit Company. Later, Mrs. Willis signed a release but was assured by State Farm that her medical bills would be paid. *Id.*   State Farm refused to pay medical bills later incurred and cited the release. The release was in the amount of $6,924, of which $6,500 went to Ford Motor Credit. *Id.* at 724. At trial, Mrs. Marlar's motion for a directed verdict was granted. This Court  reversed and stated that a jury question had been created as to whether the release was void. *Id.*

¶23.    In *Alexander v. Myers*, the Court  upheld a jury award of $10,000. It found that the release obtained from the injured party, who had little more than a sixth grade education, and his 19-year-old wife, was procured through fraud. *Alexander*, 219 So.2d at 160-63. Alexander was paid $125 to sign the release. The Court held that the inadequacy of the amount paid to the appellee did not per se constitute fraud but "was a factor to be considered by the jury in determining whether or not the appellee was

11

deceived and whether the appellee was satisfied in receiving only $125 in full and complete settlement of all his injuries, expenses, disability, pain and suffering." *Id.* at 161. The Court found that a clear cut issue of fact as to fraud and misrepresentation was presented by Alexander concerning the procurement of the release. *Id.* at 162.

¶24.     In *Tate v. Robinson*,  78 So.2d 461, the Court reversed the sustaining of the defendants' demurrer to plaintiff's replication to the defendant's plea of release and held that a factual question existed as to the circumstances of procuring the release. *Id.* at 463. Mrs. Tate was injured in a motor vehicle accident as a result of the negligence of her son-in-law and two daughters. *Id.* at 461.  Mrs. Tate was assured by the insurance agent who procured the release that she was releasing only her son-in-law and not her two daughters. *Id.* at 462.  When she later sued her daughters, she found out that the release also covered them. The trial court sustained the defendant's demurrer to plaintiff's replication based on the release. The Court  held that the demurrer should not have been granted and that the issue of whether or not the release should be avoided should be presented to a jury. *Id.* at 463.

¶25.     In other cases cited by Chandeleur, the Court upheld the application of releases in cases where fraud or misrepresentation was not an issue. In *Houser v. Brent Towing Co.*, 610 So.2d 363 (Miss. 1992), the Court  affirmed the granting of summary judgment based on a written release. Houser was injured while employed by Brent Towing and executed a release for $160,000 in settlement of his claim. *Id.* at 363-64. He subsequently sued Brent Towing for an unpaid medical bill, arguing, that despite the language of the written release, it was the intent of the parties that Brent Towing would pay all medical expenses incurred prior to the payment of the settlement funds. *Id.*

12

¶26. In *McCorkle v. Hughes*, 244 So.2d 386 (Miss. 1971); *Pearson v. Weaver*, 252 Miss. 724, 173 So.2d 666 (1965); and *Pearce v. Pierce*, 214 Miss. 344, 58 So.2d 824 (1952), the Court upheld verdicts for the defendants based on releases executed by the plaintiffs. In each case there was a bench trial and the plaintiffs were allowed to fully develop their arguments concerning the circumstances surrounding the execution of the releases. In *Pearson,* the Court, quoting from *Fornea v. Goodyear Yellow Pine Co.*, 181 Miss. 50, 65-66, 178 So. 914, 918 (1938), stated:

> While the law recognizes that there is no method known to the law by which to make people prudent, and that experience shows that people often imprudently make contracts, including the signing of releases, yet every person must presume to know the law, and in the absence of some misrepresentation or illegal concealment of facts, the person must abide by the consequences of his contracts and actions. In the light of the fact that people are not prudent, and may at times be unjustifiably imposed upon, this Court has been liberal in reviewing the transactions where one party might have the advantage over another party in experience, knowledge, and wisdom; but in the absence of fraud, deceit, or fiduciary relations of some kind, the court cannot relieve a person from the consequence of his acts merely because he has not acted prudently or diligently about his contracts or other matters.

173 So. 2d at 669.

¶27. In *Service Fire Ins. Co. of N.Y. v. Reed*, 220 Miss. 794, 72 So.2d 197, 198 (1954), the plaintiff argued that he was coerced into signing a release under threat of criminal prosecution. In agreeing with his argument, the Court "recognized that there were circumstances in which a person could be coerced into signing a release and that in such cases, releases obtained under said circumstances could possibly be avoided." *Smith*, 638 So.2d at 1261. The Court in *Reed* looked to threat of criminal prosecution if the release was not signed, the fact that Reed was not represented by counsel when he signed, the superior bargaining position of the insurance company, and Reed's lack of education. 72 So. 2d at 198.

13

¶28. What all the cases make clear is that where there are allegations made as to the validity of a release due to fraud, misrepresentation, adhesion or other inequities then the case properly goes to the jury or fact finder. As stated in *Smith v. Sneed*: "[s]uch an approach is consistent with other decisions of this Court wherein the Court has held that, relating to releases, issues of good faith, voluntariness, and duress were questions properly submitted to a jury." *Id*. (citing *Willis v. Marlar*; *City of Meridian v. Godwin; Davis v. Elzey*). The court went on to say:

> The rationale for these cases was explained by this Court in *Kansas City, M. & B. Ry. Co. v. Chiles*, 86 Miss. 361, 38 So. 498 (1905). In *Chiles*, an employee of the railroad was injured by its alleged negligence. Although he had signed a release, the injured employee sued and won. The railroad appealed, arguing that it should have been granted a directed verdict in view of the release. In holding that the lower court properly submitted the question of whether the defendant obtained the release in good faith with a full understanding on the part of the plaintiff of his legal rights to the jury, this Court stated: No release of this nature shall be upheld if any element of fraud, deceit, oppression or unconscionable advantage is connected with the transaction. In passing on the validity of such release, when assailed, all surrounding circumstances should be fully developed, and the relative attitudes of the contracting parties clearly shown. So that the jury, in the clear light of the whole truth, may rightly decide which story bears the impress of verity.

*Smith*, 638 So.2d at 1261-62.

¶29. In *Derouen v. Murray*, 604 So.2d 1086 (Miss. 1992), a shareholder who owned 50% of closely held corporation challenged the propriety of the sale of corporation's assets. Derouen and Murray were each fifty percent shareholders in H & D. *Id.* After considerable difficulty in working together and after the corporation has been transferred several times, Deurouen executed a handwritten release in which he acknowledged "receipt of $5100.00 from H.L. Murray as payment in full for any and all debts between us as of this the 28th day of December 1985, for our business dealings dated December 9, 1982, to date." *Id.* at 1089. He signed and dated the release. *Id.* In 1986, he sued Murray charging and demanding

14

an accounting of all assets and monies coming into his hands in favor of H & D Seafood, Inc. and a declaration declaring and paying over to plaintiff a fifty percent of all interest on that money in the form of dividends. *Id.* at 1090.

¶30. The Court held that Derouen released Murray "from any and all further obligations" between them and had no cause of action against Murray. *Id.* The court dismissed Derouen's suit finding that the document spoke for itself and was clear and unambiguous. *Id.* There was no evidence of fraud, duress, or mistake or the like, "certainly not evidence such that we might disturb the Court's implicit finding that the release is effective according to its tenor." *Id.* We also took note of the absence of any clear and convincing parol evidence that the release meant anything than what it provided. *Id.* The release by its terms addressed "debts between us"--Derouen and Murray. *Id.* It released all claims Derouen has or had against Murray arising out of "our business dealings." *Id.*

¶31. Under *Farragut v. Massey*, the trial court here properly found the Release Contract unambiguous and, by its plain language, constituted an accord and satisfaction. The trial court properly found accord and satisfaction by the consideration paid for the release of "the Claims" which is expressed in the introductory recitation of the release.

¶32. In December 1998, Royer received $2,080,000 as settlement of all claims asserted including those which could have been asserted against Chandeleur's parent company, Champion Enterprises, and all of its parents, subsidiaries and affiliates. At that time, the Pike County lawsuit in question was pending, and those claims were asserted. The Release expressly stated that Royer's receipt of settlement funds represented a full accord and satisfaction of "any and all claims which arose or may arise from any prior

15

business dealings" between Royer and Champion. It is absurd to think that Chandeleur would have paid over $2 million to settle with Royer and not settle any and all claims. That is clearly what was contemplated by the parties in the Release Agreement. The trial court was correct.

## CONCLUSION

¶33.    We hold that the trial court was correct in dismissing Royer's lawsuit as the Release Agreement was not ambiguous and the intent was to release the Pike County claim also. Therefore, we affirm the trial court's judgment.

¶34.    **AFFIRMED.**

**PITTMAN, C.J., WALLER, COBB, EASLEY, CARLSON AND GRAVES, JJ., CONCUR. McRAE, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION. DIAZ, J., NOT PARTICIPATING.**


**McRAE, PRESIDING JUSTICE, DISSENTING:**

¶35.    Since the trial court did not properly follow the law with regard to contract construction and conducted an insufficient analysis of the issues presented under the law its judgment should be reversed, and this case should be remanded for further proceedings. Despite the majority's contentions, the trial court did not conduct a complete review of the issues according to the law; and therefore, the only proper disposition is to reverse and remand the case. For this reason, I dissent.

¶36.    In interpreting a contract, the cardinal rule is to *give effect to the parties' intentions as reflected in the contract*. *Holland v. Mayfield,* 826 So.2d 664, 669 (Miss. 1999). Such interpretation must be conducted by using objective, not subjective, standards. *Simmons v. Bank of Miss.,* 593 So.2d 40, 42 (Miss. 1992). *See also Cooper v. Crabb*, 587 So.2d 236, 239 & 241 (Miss.

16

1991) (Legal purpose or intent should first be sought in an objective reading of the words employed in the contract to the exclusion of parol or extrinsic evidence).

¶37.     Accordingly, the first concern is with what the parties said *in the contract*, since "words employed are by far the best resource for ascertaining intent and assigning meaning with fairness and accuracy." *Miss. Transp. Comm'n v. Ronald Adams Contractor, Inc*., 753 So.2d 1077, 1084 (Miss. 2000). We look to the "four corners" of the contract whenever possible to determine how to interpret it. *Id.*  Indeed, all  parts of a contract should be harmonized and given effect, if at all possible. *Hewitt v. Frazier*, 219 So.2d 149, 153 (Miss. 1969).

¶38.     When the language of a contract is "clear, definite, explicit, harmonious in all its provisions, and free from ambiguity throughout, the court looks solely to the language used in the instrument itself, and will give effect to each and all its parts as written." *Farragut v. Massey,* 612 So.2d 325, 330 (Miss. 1992) (quoting *Sumter Lumber Co. v. Skipper,* 183 Miss. 595, 184 So. 296 (1938)). The court shall read the contract as a whole, so as to give effect to all of its clauses. *Warwick v. Gautier Utility Dist.,* 738 So.2d 212, 215 (Miss. 1999). Where there is an inconsistency between general provisions and specific provisions of an agreement, the specific provisions ordinarily qualify the meaning of the general provisions. This rule can be invoked when necessary to make clear that which is doubtful. *Williams v. Batson,* 186 Miss. 248, 187 So. 236 (1939).

¶39.     Finally,  only if the language is unclear or ambiguous can the court go beyond the text to determine intent. *Turner v. Terry,* 799 So.2d 25, 32 (Miss. 2001).  And where a contract is doubtful or ambiguous, any ambiguity can be construed against the drafter. *Banks v. Banks,* 648 So.2d 1116, 1121 (Miss.

17

1994) ("When the terms of a contract are vague or ambiguous, they are always construed more strongly against the party preparing it.").

¶40. The trial court, found that the Release was not ambiguous; and therefore, it included the Pike County claim. In making that determination, its analysis failed in two respects. It failed to conduct a thorough fact finding and then failed to apply the correct law.

¶41. The pertinent provisions of the Release Agreement read as follows:

> This Confidential Settlement, Release and Indemnity Agreement (The Agreement) is entered into. . .in favor of Champion. . .**in settlement of** any and all claims, demands, losses, costs, damages and expenses, **including but not limited to** Redman's denial of Royer's request that Redman sell Royer product for Royer's Gulfport, Mississippi location; Redman's termination of Royer as an authorized retail distributor of its products in March 1997; the appointment of Jackey Simmons as a Redman retailer in Brookhaven, Mississippi; all related personal and physical injury claims of Larrye Joe White and Patsy White arising out of Redman's denial of Royer's request that Redman sell Royer product for Royer's Gulfport, Mississippi location, Redman's termination of Royer as an authorized retail distributor in Brookhaven, Mississippi, and more fully described in the pleadings **filed in this cause,** all discovery, interrogatory responses, depositions, affidavits, motions, briefs, and arguments of counsel to **the Court**, **as well as any and all claims which arose or may arise from any prior business dealings between Royer. . .and Releasees (the "Claims"), including but not limited to, those claims which, at any time, have been asserted in and are [sic] could have been the subject of litigation of Civil Action No. 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** on the docket of the Circuit Court of the First Judicial District of Hinds County, Mississippi (**the Lawsuit**.)                   Royer and the Whites declare that it is their intention to grant, by and through this Agreement, a complete release to all Releasees from any **Claims asserted by Royer and the Whites, or which could have been asserted by them, in the Lawsuit, or in any way related to or arising from the Claims,** and further to fully defend, indemnify, and hold harmless Releasees from and against **any and all claims** . . .which **have been or could be**

18

**asserted hereafter** against Releasees by Royer or the Whites, or which in any way arise **from the Claims**...

2.  **RECEIPT.** Royer and the Whites agree to accept in full accord and satisfaction **of the Claims** the sum of [left blank], the receipt and sufficiency of which are hereby acknowledge by Royer and the Whites, as full accord and satisfaction **of the Claims** and as full consideration for the execution of this Agreement...

5.  **RELEASE.** For and in consideration of the Settlement Funds paid by Releasees, Royer and the Whites, for themselves and each of their agents, employees, affiliates, heirs, successors and assigns, hereby and forever acquit, forgive, release and discharge Releasees, . . .from **any and all causes of action. . .arising out of the Claims, all matters which were or could have been asserted in the Lawsuit, and any claim of any type in any way related to the business dealings on or before the date of this agreement between Royer, the Whites and Releasees...**

6.  **DISMISSAL.** Royer, the Whites and their counsel of record **in the Lawsuit** agree that they shall immediately obtain dismissal with prejudice of all pending claims and actions and previously dismissed claims and actions that were dismissed without prejudice against the Releasees **in** Civil Action No. 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CTV on the docket of the Circuit Court of the First Judicial District of Hinds County, Mississippi...

7.  **INDEMNITY**. Royer and the Whites agree to fully defend, indemnify and hold harmless Releasees from and against any claim. . . related to or arising out of **the Claims**, the matters asserted in **the Lawsuit** or referenced in paragraph 8 of this Agreement [the Dismissal provision]...

12. **RESERVATION OF CLAIMS.** The language of this Agreement notwithstanding, nothing in this agreement shall be construed to release any claim Royer may have against [Champion] for properly submitted and documented but unpaid warranty or service work; for properly submitted but unpaid accounts receivables; for any warranty claim properly submitted and documented hereafter asserted so long as such warranty claim arises during the warranty period . . .

(emphasis added).

¶42. Champion argues, and the majority agrees, that the Release settles "any and all claims that exist(ed) as of the date of [the] agreement, December 22, 1998." Royer, however, argues that, when read as a whole, the Release is ambiguous and, particularly since it contains very specific references to the Hinds County claim, designated as "the Lawsuit," it cannot be interpreted to include the Pike County claim. Royer also points out that the words "including but not limited to" cannot be reconciled, or harmonized, throughout the Release with the more specific and predominate references to "the Lawsuit" and the specific provisions of the Release. Royer asserts that the words "including but not limited to" modify only those claims and possible claims that did or could have come to light, or could later come to light, "the Claims" under the pleaded facts and allegations of the Hinds County "Lawsuit." "The Claims" are solely modified and/or qualified by very specific discovery responses or events which led to the Hinds County lawsuit. Royer also argues that since Champion knew the Pike County claim was pending when the Release was drafted, it should have been explicitly included. Finally, Royer argues that under the Reservation provision, the Pike County claim is clearly excluded from the scope of the Release.

¶43. Initially, this Release was the product of a rather intimidating complaint – one involving antitrust, unfair trade practices and tortious interference allegations. Moreover, it is clearly a product of "the Lawsuit" filed in Hinds County. The Pike County claim is one for unpaid warranty service and unpaid receivable accounts. Therefore, the subject matters of these claims are markedly different.

¶44. Second, the Release Introduction is very specific to the allegations of the Hinds County complaint, but includes indefinite "including but not limited to" language. The Dismissal provision references only claims relating to or potentially relating to the Hinds County claim. The Receipt provision (consideration paid) is specific to "the Claims" as defined in the Introduction, without any reference to inclusion of any

20

other claims. However, the Release Clause releases "any claim of any type in any way related to the business dealings on or before the date of [the] agreement between Royer, the Whites and Releasees."

¶45.    Looking at the four corners of the Release in an attempt to  harmonize all of the particular provisions, it becomes clear that the Release is  most specifically concerned with the allegations of the Hinds County complaint, or "the Lawsuit," and "the Claims,"  as Royer argues.  However, the words "including but not limited to" are generally included, thus indicating that the scope of the Release is *unlimited* as to the release of claims arising before the execution of the Release.

¶46.    This gives rise to ambiguity.  Indeed, these provisions cannot be harmonized, particularly in light of the Dismissal provision.  It does not provide for the dismissal of any pending claim other than those relating to the Hinds County suit. It does not dismiss the Pike County claim even though the parties were fully aware it was pending.  These provisions are inconsistent.

¶47.    As cited, where there is an inconsistency between general provisions and specific provisions of an agreement, the specific provisions ordinarily qualify the meaning of the general provisions. This rule can be invoked when necessary to make clear that which is doubtful. *Williams*, 187 So. at 239.  Subject to certain qualifications, all circumstances accompanying a transaction may be taken into consideration in construing an agreement. *Id.*  Given these rules of construction and the fact that the Release is the product of the Hinds County lawsuit, as well as the fact that there are consistently specific references to that suit the specific language should govern the scope of the Release. The specific provisions of the Release related to Hinds County claim.

¶48.    On this point,  Royer also argues that the Pike County claim should have been explicitly included in the Release since Champion knew it was pending in court.   Mississippi does not have an explicit rule

requiring that a release mention the claim(s) to be released but our sister jurisdictions do. In Texas, for example, the rules are these:

> To effectively release a claim, the releasing instrument must "mention" the claim to be released. *Victoria Bank & Trust Co. v. Brady,* 811 S.W.2d 931, 938 (Tex 1991). Any claims not "clearly within the subject matter" of the release are not discharged, even if those claims exist when the release is executed. *Id.* It is not necessary, however, for the parties to anticipate and identify every potential cause of action relating to the subject matter of the release. *Keck, Mahin & Cate v. National Union Fire Ins. Co.,* 20 S.W. 3d 692, 698 (Tex. 2000).

*Baty v. Protech Ins. Agency,* 63 S.W.3d 841, 848 (Tex. App. – Houston 2001). S*ee also* ***Grimes v. Andrews,*** 997 S.W.2d 877, 884 (Tex. App. – Waco 1999) (finding that the appellant's claims for wrongful termination and discrimination, which were filed in federal court, were not released in a settlement agreement referring only to the state court cause number under which the appellant's workers' compensation claim was filed).

¶49. Regardless of the absence of Mississippi authority on point regarding the necessity of inclusion, the present Release is at the very least ambiguous. Its specific provisions do not reconcile with its general. And throughout ,"the Claims," the subject of the Release, are modified by events occurring only in connection with the Hinds County lawsuit while the "including but not limited to" language covers every conceivable claim between the parties -- past, present and future. Notwithstanding this ambiguity, the Release does not capture those claims reserved by the reservation provision, which reads as follows:

> **RESERVATION OF CLAIMS.** The language of this Agreement notwithstanding, nothing in this agreement shall be construed to release any claim Royer may have against [Champion] for properly submitted and documented but unpaid warranty or service work; for properly submitted but unpaid accounts receivables; for any warranty claim properly submitted and documented hereafter asserted so long as such warranty claim arises during the warranty period . . .

22

¶50.    This provision reserves two classes of claims: (1) warranty and accounts receivable claims asserted *prior to* the execution of the Release, and (2) warranty claims arising *after* the execution of the Release *so long as* they arise during the warranty period. The Pike County claim squarely falls into the Reservation Provision, since it is a preexisting claim for unpaid warranty work and unpaid accounts receivables.

¶51.    In conclusion, the Release is ambiguous. As such, the ambiguity is to be construed against the drafter -- Champion. ***Banks,*** 648 So.2d at 1121. Additionally, the Pike County claim is reserved by the Reservation Clause. The parties therefore should be heard on their intent regarding the making of this Release. Accordingly, this case should be reversed and remanded for further proceedings.

¶52.    As for the accord and satisfaction arguments made by Chandeleur, the majority erroneously finds that the Release Agreement did provide accord and satisfaction of Royer's Pike County claims. However, as already discussed above, the language of the Release does not support such a finding. The relevant portion of the Release reads as follows:

> 2.    **RECEIPT.** Royer and the Whites agree to accept in full accord and satisfaction **of the Claims** the sum of [left blank], the receipt and sufficiency of which are hereby acknowledged by Royer and the Whites, as full accord and satisfaction **of the Claims** and as full consideration for the execution of this Agreement.

(emphasis added).

¶53.    The consideration paid was for release of "the Claims" as indicated in the introductory recitation of the Release. However, as discussed above, the Release Agreement is ambiguous; therefore, a determination as to this issue cannot be made until sufficient fact finding and analysis is done at the trial court.

23

¶54. As for the trial court's dismissal of the Pike County claims as having no factual issue to present to the jury, as already stated above, such a finding cannot be made upon the factual findings conducted and the analysis employed by the trial court. This Court has consistently held that contracts should be interpreted according to their specific terms and conditions. *Warwick,* 738 So.2d at 215. Where language in a legal instrument is without gross ambiguity, neither parol testimony nor other extrinsic evidence is admissible to construe the meaning of the language. *Cooper,* 587 So.2d at 241. Absent ambiguity, there are no facts to be submitted to a jury. *Hobgood v. Koch Pipeline Southeast, Inc.,* 769 So.2d 838 (Miss. Ct. App. 2000). The trial court found the Release unambiguous and, therefore, dismissed the action. However, the trial court erred for the reasons cited above.

¶55. The Release is ambiguous as it applies to the Pike County suit that was pending at the time. The separate provisions do not clearly indicate that the Pike County claim was intended to be released. As such, the trial court cannot properly dismiss the Pike County claim until sufficient fact finding has been conducted and the proper legal analysis is applied.

¶56. It would be absurd to think that Royer and Champion were dismissing the lawsuit in Pike County without putting language to that effect in the Hinds County claim. The trial court's order should be reversed, and this case should be remanded for further proceedings. For the above-stated reasons, I dissent.