# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
June 9, 2009

Charles R. Fulbruge III
Clerk

No. 08-60651

SPENCER BROWN; ARLENE BROWN; FLORENCE CLARKE;
STEVEN CLUNIS; LESLIE DAVIS; MIRIAM DAVIS; OLIVER FERGUSON;
ELAINE FORBES; ANNETTE GRANT; DELROY HINDS; BEVERLY
NELSON; VANICE PATRICK; RANDOLPH OWEN; MILEAN OWEN;
DAVID ROWE; DOREEN SHAW; WYCLIFE WILLIAMS; TELKA GRANT-
WILLIAMS; JULLAINE WISDOM; MAXINE WILLIAMS

                                   Plaintiffs-Appellants

v.

CURTIZE D. JOHNSON; GREYHOUND BUS COMPANY, doing business as
GREYHOUND LINES, INC.

                                   Defendants- Appellees

Appeal from the United States District Court
for the Southern District of Mississippi
No. 2:08VB4KS-MTP

Before REAVLEY, DAVIS, and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

      The plaintiffs appeal the judgment of the district court enforcing releases
they signed in settlement of injuries sustained in a crash while they were
passengers on a chartered Greyhound bus.  Based on our conclusion that

---

[*] Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

genuine issues of fact exist regarding the enforceability of those releases obtained shortly after the accident, we reverse and remand.

## I.

On March 14, 2007, a Greyhound charter carrying 30 Jamaican residents to work as seasonal labor in Branson, Missouri was involved in an accident near Wiggins, Mississippi. The accident occurred after the driver dropped his map and bent down to retrieve it. The bus overturned on the highway median.

Eleven passengers were transported by ambulance to three separate area hospitals. Nineteen passengers (including all but four of the appellants) were transported to hospitals by school bus because their injuries did not appear to be significant, mainly contusions, sprains and strains.

Greyhound dispatched adjusters from Frontier Adjusters to the scene and to the various emergency rooms where the passengers had been transported. The adjusters met the injured passengers at the hospitals and attempted to reach settlements with them for their injuries. The passengers taken to one hospital contacted their employer who advised that they should not sign any release. Sixteen passengers (the "Releasors") at the other two hospitals signed releases in favor of Greyhound and received amounts ranging from $500 to $1,500 each, in addition to payment of their medical expenses.[1]

---

[1] The short release read as follows:

GENERAL RELEASE

I/We, in consideration of the payment of _____ Dollars $_____, hereby release and forever discharge any and all claims whatsoever arising from an accident, occurrence of loss on or about _____ at or near _____.

It is expressly agreed that this release and payment of said sum is not to be construed as an admission of liability.

This is a full and final release and satisfaction of all claims.

Each release was appropriately completed when finalized.

The Releasors claim that the adjusters used a number of fraudulent, unfair bargaining tactics to mislead them into signing the releases. They assert that the adjusters directed them to go individually into a separate room at the hospital. They were told that Greyhound would only pay their medical expenses if they signed a release. The adjusters refused to allow the accident victims to take the release from the interview room to discuss it among themselves. Further no transportation was provided from the hospital until each of the passengers met with the adjusters. Individual affidavits from the Releasors, indicate that the adjusters described the payments received as an "incentive," and the "release" as a form that would release them from the hospital. Some understood that the form was to allow the adjusters to pay for the meals they had at the hospital or as authorization for the adjusters to pay their medical bills. Some of the plaintiffs were told they could get additional money if their injuries did not heal as quickly as expected.

The Releasors also claim that they were at several disadvantages in this process. They had just been involved in a traumatic bus accident, were far from home and without resources either to pay the hospital or for transportation to continue their trip. Some were still in pain and had been given pain medication and/or muscle relaxants. Greyhound denies all allegations.

The Releasors repudiated their settlements by letter dated April 3, 2007, and together with all of the non-releasing passengers filed suit against Greyhound and the driver. Four spouses added loss of consortium claims. Greyhound filed a motion for summary judgment and motion to enforce settlement, which the district court granted based on the unambiguous language in the releases and the "more-than-nominal" consideration they received. After

the district court certified the judgment for appeal under Rule 54(b), the Releasors and their spouses appealed.

## II.

Although Mississippi law generally adheres to the principle that a party is charged with knowledge of the terms of a contract that he signed, *see, e.g. , MS Credit Ctr., Inc. v. Horton*, 926 So.2d 167, 177 (Miss. 2006), the state's courts have recognized exceptions for releases procured under circumstances evidencing bad faith, disparity in bargaining power, coercion, duress, or other inequities. For example, in *Willis v. Marlar*, 458 So.2d 722 (Miss. 1984), the plaintiffs were involved in an automobile collision with the defendant. The defendant's insurer issued plaintiffs a check payable to them and their motor credit company. Later the insurer's agent met with the plaintiffs at a hurried meeting during their lunch break at work at which time they signed an "agreement and release." Mrs. Willis stated that the agent asked her to sign a document expressing her satisfaction with the used car she and her husband bought to replace their wrecked vehicle. When she asked about blank spaces in the document, the agent said he would fill them in. She signed the release without reading it. Mr. Willis arrived next. He believed that the release form was a statement that the insurer would pay "up to date" all medical bills and signed it, also without reading it. He explained that it was a hurried meeting, that the blanks were not filled in and that the title "Agreement and Release" was concealed by the clip of a clipboard. The only payment the plaintiffs received, other than the amount for their damaged car, was $424.00. The plaintiffs argued that there was an absence of good faith and full understanding of legal rights, that the nature and effect of the instrument was misrepresented, that there was a failure of consideration and that Mrs. Willis was induced not to read the instrument. The Mississippi Supreme Court reversed the district court's order directing verdict for the defendant on the release, finding that there was

an issue of fact for the jury on the releases. See also *Alexander v. Myers*, 219 So.2d 160, 160-63 (Miss. 1969)(decision to submit issue to jury was affirmed where release obtained from person with sixth grade education and his 19-year old wife was procured by fraud and misrepresentation. Adjuster told plaintiff that the release was an authorization to thereafter consummate a settlement and advance funds to appellee. Plaintiff could not read very well, could not read the release and it was not read to him.); *Tate v. Robinson*, 78 So.2d 461 (Miss. 1955)(Issue of release's enforceability should have been submitted to the jury when injured party received a nominal sum in relation to her injuries, did not know her rights and relied entirely on the representations of the adjuster who induced her to sign the release without disclosing its terms.) These cases were reaffirmed by the Mississippi Supreme Court in *Royer Homes of Mississippi, Inc. v. Chandeleur Homes, Inc.*, 857 So.2d 748, 757 (Miss. 2003), in which the Supreme Court stated "What all the cases make clear is that where there are allegations made as to the validity of a release due to fraud, misrepresentation, adhesion or other inequities then the case properly goes to the jury or factfinder," after citing *Tate, Alexander* and *Willis*.

The issue in this case then is whether the plaintiffs' affidavits are sufficient to create a genuine issue of fact as to "to fraud, misrepresentation, adhesion or other inequities" in the execution of the releases. We conclude that they do. The plaintiffs were slightly educated foreigners, although they do speak and read English. They were without resources to pay the medical bills they incurred as a result of the bus accident and dependent on Greyhound for transportation to continue their journey to their jobs Missouri. The releases were obtained shortly after the accident, when the plaintiffs described themselves as nervous and shaky. Some were in pain and under the influence of medication they had been given. The affidavits also reveal that the plaintiffs were misled about the nature of the document they were asked to sign. Some

5

were told that they had to sign a form to receive an "incentive." Others were told that the release had to be signed so their medical bills could be paid.

Based on the affidavits discussed above and Mississippi case law, issues of fact are present on the enforceability of the releases and the district court's grant of summary judgment in favor of the defendants must be reversed.

## III.

The district court dismissed the loss of consortium claims brought by spouses of the Releasors on the basis that "loss of consortium claims are derivative claims under state law, [accordingly] this Court's enforcement of the releases bars the signatories' spouses claims as well," citing *J&J Timber Co. v. Broome*, 932 So.2d 1, 6 (Miss. 2006). Based on our disposition of the main claims in this case, we need not consider whether the loss of consortium claims were properly dismissed.

## IV.

For the foregoing reasons, we reverse the judgment of the district court dismissing plaintiffs' personal injury and loss of consortium claims and remand this case to the district court for further proceedings consistent with this opinion. REVERSED and REMANDED.